IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| LAMONT WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:11-cv-00024 |
| v. | ) | |
| | ) | |
| DOLLAR GENERAL CORPORATION, | ) | |
| | ) | **MEMORANDUM OPINION** |
| DOLGENCORP, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | By:  Jackson L. Kiser |
| DOLGEN, LLC, | ) | Senior United States District Judge |
| | ) | |
| Defendants. | ) | |

Before me are: Defendants' Motion for Summary Judgment, and [sic], in the alternative, Motion for Judgment on the Pleadings; Plaintiff's Motion to Compel Discovery and Enlarge Time, or, in the alternative, for a Spoliation Inference; and Defendants' Motion to Continue and/or Stay Trial Setting.  I held a hearing on these motions on March 1, 2012, at which counsel for both Plaintiff and Defendants appeared and presented argument.  Having thoroughly reviewed the briefs, the record, and the arguments of counsel, the matter is now ripe for decision.  After careful consideration, and for the reasons set forth below, Defendants' Motion for Summary Judgment, and [sic], in the alternative, Motion for Judgment on the Pleadings is **GRANTED**, and Defendants' Motion to Continue and/or Stay Trial Setting is **DENIED**.  Based on the representation of counsel that the matter has been resolved, I deem Plaintiff's Motion to Compel Discovery and Enlarge Time **MOOT**.

## I.    STATEMENT OF FACTS

This case arises out of Plaintiff Lamont Wilson's ("Plaintiff") claim of discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, as amended. The material facts are largely undisputed.  Plaintiff began working at Defendant Dollar General Corporation's ("Dollar General") South Boston distribution center in September 2009.  (Wilson Dep. 29:17–22, 34:20–35:5, January 4, 2012.)  For the first few months of his employment, his duties consisted primarily of loading inventory for transportation to Dollar General's retail outlets.  (*Id.* 34:22–37:5.)  Subsequently, he was transferred to a position where he was primarily responsible for processing, loading, and shipping orders for various inventory.  (*Id.* 37:6–38:24.) According to Nikki Stinespring ("Stinespring"), Dollar General's Human Resources manager during the relevant time period, Plaintiff's duties required the ability to read labels on various merchandise and handle heavy equipment.  (Stinespring Dep. 29:1–16, 37:16–21.)  Therefore, reasonably good vision was essential to Plaintiff's job.  (*Id.*)

Plaintiff suffers from complete and permanent blindness in his right eye due to a retinal detachment that occurred during his adolescence.  (Wilson Dep. 50:21–51:9.)  Beginning in February 2010, Plaintiff additionally suffered an onset of iritis in his left eye.  (*Id.* 49:1–50:16.) This inflammation of the eye caused blurred vision and eventually resulted in loss of virtually all vision in his left eye for a period of approximately seven-and-a-half weeks.  (*Id.* 51:22–52:22.) As Plaintiff testified, "[B]ecause the fact that I only have one eye, and the fact that my vision was blurred, I couldn't see to drive, so I knew I couldn't work."  (*Id.*  53:21–54:4.)  Plaintiff immediately began undergoing medical treatment for his condition at Dominion Eye Center beginning on February 12, 2010.  In the ensuing weeks, his doctors provided him with multiple notes stating that he should be granted leave from work due to his condition.  (*Id.* 55:4–65:20;

Pl.'s Mem. in Opp. to Def.'s Mot. for Sum. J. [hereinafter "Pl.'s Mem."] Ex. 4–11.) In all, during this period, Dollar General granted Plaintiff six weeks of medical leave available pursuant to its employee medical leave policy, plus an additional two weeks to allow him further time to recover from his condition. (*Id.* 55:8–56:25.) On April 6, 2010, Dr. Terry D. Odom ("Odom"), Plaintiff's treating physician at Dominion Eye Center, examined Plaintiff and provided him with a note stating: "[Plaintiff] is under my care for the following: glaucoma and iritis. He may return to work as of today 4-6-10." (Pl.'s Mem. Ex. 9.) After Plaintiff telephoned Stinespring and informed her that he was still experiencing blurred vision, however, she told him that he could report to work on the following day, April 7, 2010. (Wilson Dep. 63:4–66:1.)

On April 7, 2010, however, Plaintiff began experiencing increased irritation in his left eye and sought additional treatment at the emergency room at Danville Regional Medical Center. (*Id.* 66:4–67:10, 85:11–22.) The attending physician there provided Plaintiff with eye drops and a prescription for pain medication. (*Id.* 66:8–67:9.) The physician also provided Plaintiff with an additional note stating: "This notice verifies that your employee, Lamont Wilson was seen in this facility on 040710 [sic] He/she may return to work on 040910 . . . If symptoms continue and the employee is unable to perform the full duties of their job by this date, please advise the employee to return to this facility or make an appointment with the referral physician for further evaluation." (Pl.'s Mem. Ex. 11.) Plaintiff's mother then drove him to Dollar General's Distribution Center in South Boston where he alleges that he delivered the note to Stinespring,[1] and represented that he could not report for work on that evening. (*Id.* 67:12–70:1, 71:14–72:18,

---

[1] The evidence is in conflict as to whether or not Plaintiff submitted the note to Stinespring. In her deposition, Stinespring testified that she did not recall seeing the note. (Stinespring Dep. 35:14–24.) Nevertheless, viewing the evidence in the light most favorable to Plaintiff, the Court will assume that Plaintiff delivered the note as he testified.

3

73:2–7.) Stinespring reminded Plaintiff that Dr. Odom had released him to return to work on April 6, 2010, and that Plaintiff had already received an additional day of leave beyond that; however, Plaintiff maintained that he was still unable to come to work (*Id.* 73:2–17.) Stinespring made clear to Plaintiff that Dollar General was unwilling to grant him additional leave and, if he did not return to work that evening, he would be terminated. (*Id.* 73:18–74:15.) She testified that she "explained to Mr. Wilson that he had used his leave time . . . and that again [she] had a return to work note, and that it was his decision whether he wanted to maintain his employment at Dollar General, but at that point he was expected to return to work." (Stinespring Dep. 38:16–24.) When Plaintiff maintained that he could not return to work, Stinespring informed him that he was terminated.[2] (*Id.* 75:5–10.)

Plaintiff continued to have problems with his left eye for at least two weeks following his termination; therefore, he concedes that he still would have been unable to return to work even on April 9, 2010, as represented in the doctor's note submitted to Stinespring on April 7, 2010. (*Id.* 75:20–76:14.) Plaintiff cannot state with any certainty the date on which he would have been able to return to work. He concedes that he was essentially seeking an indefinite period of leave until he could sufficiently recover.[3] (*Id.* 82:9–83:13.) When asked whether he knew how much more leave he would require, Plaintiff responded, "No, they didn't either because they didn't give me a chance because she fired me on the 7th." (*Id.* 83:1–6.) When asked at what point after April 7, 2010, he would have been able to return to work, he responded, "I can't

---

[2] The evidence is in conflict as to whether or not Stinespring actually terminated Plaintiff on April 7, 2010, or whether he "terminated his own employment." (Wilson Dep. 71:8–13; Def.'s Resp. to Pl.'s First Int. and Req. for Prod. No. 18.) Again, viewing the evidence in the light most favorable to Plaintiff, the Court will assume that Stinespring terminated Plaintiff on April 7, 2010.

[3] At oral argument on the present motions, Plaintiff's counsel represented that, for purposes of this claim, Plaintiff was only seeking an additional two days of leave.

4

specifically give you a date, okay?" (*Id*. 105:1–4.) Moreover, Plaintiff's problems with his left eye worsened considerably. Plaintiff was subsequently diagnosed with a retinal detachment in his left eye. (*Id*. 106:6–108:13.) As a result, he underwent surgery that resulted in total blindness for seven and a half weeks. (*Id*. 107:17–108:24.) Plaintiff believes that he could have returned to work full time at Dollar General in March or April 2011—nearly a full year after his termination—after undergoing surgery on his left eye. (*Id*. 116:3–118:15.)

## II.    PROCEDURAL HISTORY

Following his termination on April 7, 2010, Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") and completed his intake questionnaire on April 13, 2010. (*Id*. 88:3–89:20.) Subsequently, Plaintiff filed his Charge of Discrimination on June 10, 2010. (*Id*. 87:16–88:2.) After receiving his Notice of Suit Rights from the EEOC on March 31, 2011, Plaintiff filed the present action against Defendants Dollar General, DolgrenCorp, LLC, and Dolgren, LLC (collectively "Defendants") on June 15, 2011, claiming that his termination constituted discrimination in violation of the ADA. On February 7, 2012, Defendants filed the present Motion for Summary Judgment and [sic], in the alternative, Motion for Judgment on the Pleadings ("Motion for Summary Judgment") and Brief in Support asserting lack of subject matter jurisdiction and grounds for summary judgment in their favor. (Def.'s Mot. for Sum. J. [ECF No. 31].)

On February 15, 2012, Plaintiff filed his Motion to Compel Discovery and Enlarge Time, or, in the alternative, for Spoliation of Evidence ("Motion to Compel Discovery") and Brief in Support. (Pl.'s Mot. to Comp. Disc. [ECF No. 35].) On February 21, 2012, Plaintiff filed his Memorandum in Opposition to Defendants' Motion for Summary Judgment and [sic], in the alternative, Motion for Judgment on the Pleadings. On February 22, 2011, Defendants filed their

Response in Opposition to Plaintiff's Motion to Compel Discovery and Enlarge Time, or, in the alternative, for Spoliation of Evidence. (Def.'s Resp. in Opp. to Pl.'s Mem. in Supp. of Mot. to Comp. Disc. [ECF No. 39].) On February 23, 2012, Defendants filed their Motion to Continue and/or Stay Trial Setting ("Motion to Continue") in which they argue for a continuance of the trial set in this matter for a period of no less than thirty days to await a ruling on the Trustee's Motion to Dismiss or Convert filed in Plaintiff's separate Chapter 13 bankruptcy proceedings. (Mot. to Cont. pg. 1–2 [ECF No. 40].) Defendants argue that the Trustee's Motion to Dismiss or Convert will affect this Court's determination as to subject matter jurisdiction in this matter. (*Id.* pg. 2.) Defendants also raise certain scheduling conflicts that will prevent Defendants' corporate representatives from attending the trial. (*Id.*) On February 29, 2012, Plaintiff Filed his Memorandum in Opposition to Defendants' Motion for Continuance and/or Stay of Trial Setting, arguing that the Court should not continue the trial on the mere contingency that the Bankruptcy Court converts Plaintiff's Chapter 13 proceedings into Chapter 7 proceedings. (Mem. in Opp. to Def.'s Mot for Cont. pg. 1–2) [ECF No. 44].)

## III.    STANDARD OF REVIEW

The standard applicable on summary judgment is well established. Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). The court must view the facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

Case 4:11-cv-00024-JLK-RSB   Document 48   Filed 03/05/12   Page 6 of 28   Pageid#: 482

(1986). The court must not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133 (2000).

The moving party has the initial burden of pointing out to the court the deficiency in the non-movant's case that would make it impossible for a reasonable fact-finder to return a verdict in the non-movant's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A movant-defendant may show that he is entitled to judgment as a matter of law by demonstrating that the plaintiff could not prove an essential element of his case. *Id.* at 322-23. It is then up to the non-movant to demonstrate to the court that there are genuine issues of material fact and that he has made a sufficient showing on each of the essential elements of his case. *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008); *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Therefore, summary judgment is appropriate when the moving party points out a *lack* of evidence to support an essential element of his or her claim. *See Blair v. Collonas Shipyards Inc.*, 52 F. Supp. 2d 687, 692 (E.D.Va. 1999), *aff'd* 203 F.3d 819 (4th Cir. 2000).

Although Defendant's Motion for Summary Judgment alternatively moves for judgment on the pleadings, it asserts lack of subject matter jurisdiction; therefore, it is more properly construed as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). FED. R. CIV. PRO. 12(b)(1). Accordingly, I will apply the standard applicable to a motion to dismiss for lack of subject matter jurisdiction. "The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction. A trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (citing *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975)). "Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a 12(b)(1)

hearing weighs the evidence to determine its jurisdiction." *Id.*  Furthermore, in considering a

motion pursuant to Rule 12(b), the Court may take judicial notice of "items in the public record."

*Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986).  Therefore, the Court may take judicial notice

of records filed in bankruptcy proceedings.  *See Anderson v. FDIC*, 918 F.2d 1139, 1141 n.1 (4th

Cir. 1990) ("[T]he Bankruptcy Court is considered 'a unit of the district court' under 28 U.S.C. §

151, and we believe a district court should properly take judicial notice of its own records.").

## IV.    DISCUSSION

At the hearing held on March 1, 2012, Plaintiff's counsel represented to the Court that the

discovery matter raised in Plaintiff's Motion to Compel Discovery has now been resolved to

Plaintiff's satisfaction.   Accordingly, I find it unnecessary to address Plaintiff's Motion to

Compel Discovery and will proceed to address the merits of Defendants' Motion for Summary

Judgment.

### A.  Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

Because lack of subject matter jurisdiction would necessarily preclude consideration of

all further issues, I will address this issue first.  Defendants argue that they are entitled to

judgment on the pleadings because this Court lacks subject matter jurisdiction over Plaintiff's

claim due to his Chapter 13 bankruptcy filing in the United States Bankruptcy Court for the

Western District of Virginia.  (Br. in Supp. of Def.'s Mot. for Sum. J. pg. 12.)  Under Article III

of the United States Constitution, federal courts have subject matter jurisdiction over a claim

only if the claimant has standing.   *E.g.*, *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006)

(internal citations omitted).   Accordingly, if the plaintiff lacks standing, the Court lacks

jurisdiction over the claim.  Plaintiff filed his voluntary petition for Chapter 13 bankruptcy on

June 27, 2010, shortly after filing his Charge of Discrimination with the EEOC.  *In re Lamont*

Case 4:11-cv-00024-JLK-RSB   Document 48   Filed 03/05/12   Page 8 of 28   Pageid#: 484

*Wilson*, No. 10-61863-WA4, Petition, [ECF No. 1.] Defendants argue that all claims accruing prior to Plaintiff's petition for Chapter 13 bankruptcy belong to the bankruptcy estate. (Br. in Supp. of Def.'s Mot. for Sum. J. pg. 12.) Plaintiff's ADA claim clearly accrued prior to his petition for Chapter 13 bankruptcy. Therefore, they argue that only the bankruptcy trustee has standing to bring Plaintiff's ADA claim and this Court lacks jurisdiction over a claim brought by Plaintiff. (*Id.*) In their Brief, Defendants cite various Fourth Circuit authority for the proposition that all claims accruing prior to a plaintiff's filing of a petition in bankruptcy belong to the estate and, therefore, the plaintiff lacks standing to assert them. (*Id.*)

Plaintiff correctly points out, however, that the cases cited by Defendants are distinguishable from the present case because they all involve Chapter 7 bankruptcy as opposed to Chapter 13 bankruptcy. *See National Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999); *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 535 n.9 (4th 1997); *Tignor v. Parkinson*, 729 F.2d 977, 978 (4th Cir. 1984). In this case, Plaintiff has filed for Chapter 13 bankruptcy. (Pl.'s Mem. Ex. 17.) "This difference is crucial because the trustee has the exclusive authority to prosecute claims under Chapter 7, whereas Chapter 13 debtors retain authority to prosecute claims." *Brooks v. Prestige Financial Serv., Inc.*, No. 11cv02370-AW, 2011 U.S. Dist. LEXIS 118821 at *5–6 (D. Md. Oct. 14, 2011) (citing *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004); *Cable v. Ivy Tech State College*, 200 F.3d 467, 472 (7th Cir. 1999)). Although the Fourth Circuit has not yet addressed whether Chapter 13 debtors have standing to bring claims in their own name on behalf of the bankruptcy estate, the circuit courts to have considered the issue have held that the right remains with the debtor. *Id.* at *6 (citing *Smith v. Rockett*, 522 F.3d 1080, 1081 (10th Cir. 2008); *Crosby*, 394 F.3d at 1331 n.2 (11th Cir. 2004); *Cable*, 200 F.3d at 472–74 (7th Cir. 1999); *Olick v. Parker & Parsley*

*Petroleum Co.*, 145 F.3d 513, 515–16 (2d Cir. 1998); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1209 n.2 (3d Cir. 1992)). Having filed for Chapter 13 bankruptcy, Plaintiff retains standing to assert the present claim. Furthermore, on November 10, 2010, the Bankruptcy Court entered an order in Plaintiff's proceedings providing that "all property of the estate shall revest in the Debtor(s)." (Pl.'s Mem. in Opp. to Def.'s Mot. for Cont. pg. 1.) Accordingly, I find that Plaintiff has standing to assert his ADA claim, and this Court has subject matter jurisdiction. Therefore, I deny Defendants' motion to dismiss for lack of subject matter jurisdiction and proceed to consider the merits of Defendants' Motion for Summary Judgment.

### B. Defendants' Motion for Summary Judgment as to Plaintiff's ADA Claim

Defendants contend that they are entitled to summary judgment on Plaintiff's failure to accommodate claim because Plaintiff is not a qualified individual under the ADA.[4] Under the ADA an employer's failure to make reasonable accommodations for the known disabilities of an otherwise qualified individual constitutes discrimination unless the employer can demonstrate undue hardship. 42 U.S.C. § 12112(b)(5)(A) (2012). The ADA defines a "qualified individual with a disability" as a person with a disability who, with or without reasonable accommodation, can perform the essential functions of the job in question. *Id.* § 12111(8). Accordingly, to establish a *prima facie* case of failure to accommodate under the ADA, Plaintiff must show: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make

---

[4] Defendants originally included the doctrine of judicial estoppel as an additional ground for summary judgment. (Br. in Supp. of Def.'s Mot. for Sum. J. pg. 7). Defendants, however, withdrew this argument in their Reply in Support of Their Motion for Summary Judgment and [sic], in the alternative, Motion for Judgment on the Pleadings. (Def.'s Rep. in Supp. of Mot. for Sum. J. pg. 7 [ECF. No. 43].) Accordingly, I decline to consider judicial estoppel as a ground for summary judgment.

10

such accommodations." *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001).

The record shows—and Defendants do not dispute—that Plaintiff has satisfied his burden as to the first two elements of his *prima facie* case. Defendants argue, however, that Plaintiff has not proved that he is a qualified individual as required by the third prong. The overarching issue, therefore, is whether Plaintiff is a qualified individual. Defendants contend that Plaintiff requested no accommodation other than indefinite medical leave and that such a request is not a reasonable accommodation as a matter of law. Moreover, they argue that even if Dollar General had granted Plaintiff leave as requested, he would not have been able to perform the essential functions of his job within a reasonable period of time. Defendants point to evidence in the record showing that Plaintiff would not have been able to resume his work on April 9, 2010, or within any reasonable time thereafter. Plaintiff responds that Defendants' position "eviscerates" the ADA "because the process of determining a reasonable accommodation . . . is necessarily a process of uncertain length in many cases." (Pl.'s Mem. pg. 20.) Plaintiff contends that: (1) Defendants' failure to either grant Plaintiff's request for leave or engage him in an interactive process to determine the availability of a reasonable accommodation constitutes a *per se* violation of the ADA; and (2) whether an additional two days of leave was a reasonable accommodation is a jury question. (Pl.'s Mem. pg. 22, 25.) Furthermore, Plaintiff argues that in determining whether Plaintiff was a qualified individual, the Court may look only to the facts known to Dollar General as of April 7, 2010, the date of his termination. He contends that any developments occurring after April 7, 2010, are simply irrelevant to this inquiry. I will first address Plaintiff's argument that Dollar General violated the ADA by failing to engage Plaintiff in the interactive process.

11

1. Failure to Engage in the Interactive Process

Plaintiff argues that Defendants' "failure to engage in an interactive process after rejecting a requested accommodation is itself a *per se* violation of the ADA."  (Pl.'s Mem. in Opp. to Def.'s Mot. for Sum. J. pg. 22.)   Plaintiff is correct that "[o]nce an employer's responsibility to provide a reasonable accommodation is triggered, it may be necessary for the employer to engage in an 'interactive process' to determine the appropriate accommodation under the circumstances."  *Crabill v. Charlotte Mecklenburg Bd. of Ed.*, 423 Fed. Appx. 314, 322 (4th Cir. 2011) (citing 29 C.F.R. § 1630.2(o)(3)).   "This step 'imposes a duty upon employers to engage in a flexible, interactive process with the disabled employee needing accommodation so that, together, they might identify the employee's precise limitations and discuss accommodations which might enable the employee to continue working.'"[5]  *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998)).

Nevertheless, Plaintiff's assertion that Defendants' failure to either grant his request for additional leave or initiate the interactive process constitutes "a *per se* violation" of the ADA is an incorrect statement of the law.  "The interactive process the ADA foresees is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform essential job functions . . . ."  *Rehling v. City of Chicago*,

---

[5] The EEOC suggests that the employer should take the following steps to accomplish this goal: (1) analyze the particular job involved and determine its purpose and essential functions; (2) consult with the employee to ascertain the precise job-related limitations imposed by the disability and how they could be overcome; (3) in consultation with the employee, identify potential accommodations and assess the effectiveness of each in enabling the employee to perform his functions; and (4) consider the preference of the employee and implement the accommodation that is most appropriate for both the employee and employer.  *Fleetwood v. Harford Systems*, Inc., 380 F. Supp. 2d 688, 701 (D. Md. 2005) (citing *Bryant v. Better Business Bureau,* 923 F. Supp. 720, 737 (D. Md. 1996)).

Case 4:11-cv-00024-JLK-RSB   Document 48   Filed 03/05/12   Page 12 of 28   Pageid#: 488

207 F.3d 1009, 1016 (7th Cir. 2000). It is, therefore, well established that "an employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process . . . . Rather the employee must demonstrate that failure to engage in the interactive process *resulted in the failure to find an appropriate accommodation for the disabled employee*." *Crabill*, 423 Fed. Appx. at 323 (citing *Rehling*, 207 F.3d at 1016) (emphasis added); *see also Feldman v. Law Enforcement Assoc. Corp.,* 779 F. Supp. 2d 472, 487 (E.D.N.C.) (citing *Rehling*, 207 F.3d at 1016); *Fleetwood v. Harford Systems, Inc.*, 380 F. Supp. 2d 688, 701 (D. Md. 2005) (citing *Scott v. Montgomery County Gov't*, 164 F. Supp. 2d 502, 508 (D. Md. 2001)). "Thus a plaintiff must show that a reasonable accommodation existed, before a court may find that an employer's purported failure to engage in an interactive process was unlawful." *Wells v. BAE Systems Norfolk Ship Repair*, 483 F. Supp. 2d 497, 511 (E.D. Va. 2007) (citing *Jackson v. City of Chicago*, 414 F.3d 806, 813 (7th Cir. 2005)). If a plaintiff does not show that an employer's purported failure to engage in the interactive process resulted in failure to identify a reasonable accommodation, his claim fails as a matter of law. *Id.*

In the present case, it is fairly obvious that engaging in the interactive process would not have been a fruitful exercise. Consultation with Plaintiff to determine the precise limitations imposed by his disability was unnecessary. The extent of his limitations was obvious. Moreover, by the time of his termination, Stinespring was well aware of the nature of his condition. In addition, the nature of Plaintiff's disability was not such that a range of possible accommodations could have allowed him to perform the essential functions of his job. Employment on a part-time basis, reassignment to a different position, or a lighter work load would not have enabled Plaintiff to perform. He simply could not see and, therefore, could not return to work. Defendants, therefore, faced a binary decision: either grant Plaintiff additional

leave or let him go. No other potential accommodation would have materialized through the interactive process. As the above authorities indicate, the interactive process is not an end in itself; rather, it is only useful to the extent that it allows the parties to discover reasonable accommodations. Accordingly, Plaintiff can only prevail if his request for additional leave constituted a reasonable accommodation.[6]

Plaintiff cites numerous authorities for a contrary proposition. Most are factually distinguishable from the present case.[7] Specifically, Plaintiff cites *Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128 (9th Cir. 2001), for the proposition that when an employer rejects an employee's requested accommodation, it must engage the employee in the interactive process in an effort to identify reasonable accommodations. (Pl.'s Mem. pg. 22.) In *Humphrey*, the defendant-employer summarily rejected the plaintiff-employee's request to work from home without exploring other possible accommodations. *Id.* at 1138. The Ninth Circuit held that the defendant's rejection of plaintiff's requested accommodation and its failure to subsequently engage her in the interactive process constituted a violation because other reasonable accommodations, such as a temporary leave of absence were feasible. *Id.* at 1138–39. *Humphrey* is distinguishable from the present case. The plaintiff suffered from obsessive-compulsive disorder, and the facts showed that various accommodations other than that requested could have enabled her to perform the essential functions of her job. *Id.* In this case, by contrast, no other accommodation beyond Plaintiff's requested leave could have permitted him to perform the job.

---

[6] I proceed to consider that issue in the next section of this Opinion.

[7] In addition, most of the authorities cited by Plaintiff are from other jurisdictions and unpublished. Accordingly, they carry limited persuasive value in any case. *See, e.g.*, 4th Cir. R. 32.1 (citation of unpublished dispositions).

Plaintiff also relies heavily on two unpublished cases from other jurisdictions, *Brown v. Dunbar Armored, Inc.*, No. 08-3286, 2009 WL 4895237 (D.N.J. Dec. 10, 2009), and *LaFever v. Acosta, Inc.*, No. C10-01782 BZ, 2011 WL 1935888 (N.D. Cal. May 20, 2011), for the rule that an employer must engage in the interactive process with an employee who requests leave of uncertain duration. Although these cases do provide some support for such a rule, they are of highly limited persuasive value in this jurisdiction. The cases cited, in fact, do not even arise under the ADA but, rather, similar state statutes. *LaFever*, 2011 WL 1935888 at *1; *Brown*, 2009 WL 4895237 at *1 (citing N.J. Stat. Ann. 10:5-1). Because the relevant statutes appear to track the ADA's language and provisions fairly closely, however, they are not totally unpersuasive. Nevertheless, case law from this circuit appears to provide much stronger authority to the contrary. *See, e.g.*, *Wells*, 483 F. Supp. 2d at 511. Plaintiff must show that the leave he requested was a reasonable accommodation in order to prevail. Accordingly, I find that Defendants did not violate the ADA merely by failing to engage Plaintiff in the interactive process. I proceed to consider whether Plaintiff's request for leave was a reasonable accommodation that would have allowed Plaintiff to perform the essential functions of his job.

### 2. Failure to Reasonably Accommodate

Defendants argue that Plaintiff's request for indefinite leave was unreasonable as a matter of law and that such an accommodation would not have allowed Plaintiff to perform the essential functions of his job within any reasonable amount of time. Plaintiff responds that whether the requested accommodation was reasonable constitutes a jury issue. As stated above, Plaintiff must show "that with reasonable accommodation he could perform the essential functions of the position." *Rhoads*, 257 F.3d at 387 n.11. "Reasonable accommodations" are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the

position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii) (2012). The burden of demonstrating that the essential functions of the job could be performed with a reasonable accommodation rests with Plaintiff. *See Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994). Furthermore, the inquiry as to whether a plaintiff is a qualified individual turns on whether the plaintiff had the ability to perform the essential functions of his position with or without accommodation at the time of termination and not at some future date. *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995). "The relevant date for determining whether a plaintiff is a 'qualified individual with a disability' and thus entitled to the ADA's protections is the date of the adverse employment decision complained of." *EEOC v. Stowe-Pharr Mills, Inc*., 216 F.3d 373, 379 (4th Cir 2000). The Fourth Circuit has held that "[n]othing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect. Rather, a reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers*, 50 F.3d at 283. Accordingly, the reasonable accommodation provision does not require an employer to wait indefinitely for an employee's medical condition to improve. *Id.* To determine whether Plaintiff can prevail on the third prong, therefore, the Court must consider whether Plaintiff's requested accommodation would have allowed him to perform the essential functions of his job within a reasonable time.

As an initial matter, Plaintiff and Defendants disagree as to what evidence the Court may consider in determining whether the requested leave constitutes a reasonable accommodation that would have allowed Plaintiff to perform the essential functions of his job. Plaintiff argues

that this Court is confined to a "snapshot" of the facts as they appeared to Dollar General as of April 7, 2010, and that any events occurring thereafter are simply irrelevant. Defendants, by contrast, argue that this Court can properly consider the progress and duration of Plaintiff's condition after that date in making its determination. No Fourth Circuit case appears to have directly addressed this issue. Based on the available authority, however, I find that both Plaintiff and Defendants are partially correct.

The third prong of the *prima facie* case for failure to accommodate requires Plaintiff to adduce evidence "that with reasonable accommodation he could perform the essential functions of the position." *Rhoads*, 257 F.3d at 387 n.11. This third prong contains two distinct parts: (1) Plaintiff must show that the requested accommodation was reasonable; and (2) Plaintiff must show that the accommodation, if afforded, would have allowed him to perform the essential functions of his job. *See Kitchen v. Summers Continuous Care Center*, 552 F. Supp. 2d 589, 595–598 (S.D. W.Va. 2008).

I agree with Plaintiff that whether his request for additional leave was reasonable must be determined based on the information available to Dollar General when it made the decision to terminate Plaintiff. In the context of requests for leave, courts have held that the determination as to reasonableness turns on whether the requested leave will likely or foreseeably allow the employee to return to work. *See id.* at 596 (citing *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 649 (1st Cir. 2000); *McNamara v. Tourneau, Inc.*, 496 F. Supp. 2d 366, 276 (S.D.N.Y. 2007); *Baucom v. Potter*, 225 F. Supp. 2d 585, 592 (D. Md. 2002); *Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 996–97 (D. Or. 1997)). In making this determination, courts may consider such factors as whether the employee gave any indication as to when he might be able to return to work or simply demanded that his job be held open indefinitely; whether the employee's

absences were erratic or unexplained; whether the employee would be qualified on his return to work; and whether the employee was hired to complete a specific task. *Garcia-Ayala*, 212 F.3d at 650 (internal citations omitted); *see also Kitchen*, 552 F. Supp. 2d at 596–97. These factors indicate that the inquiry as to the employee's likely prognosis for recovery should be made from the perspective of the employer at the date of termination. Therefore, in determining the reasonableness of the requested accommodation, the Court will consider only that information available to Dollar General on the date of Plaintiff's termination.

Nevertheless, I agree with Defendants that the Court may properly consider events and developments occurring after Plaintiff's termination date in determining whether the requested accommodation in fact would have allowed Plaintiff to perform the essential functions of his job within a reasonable time. Plaintiff bears the burden of proving that he could perform the essential functions of his job if granted the reasonable accommodation. *See Kitchen*, 552 F. Supp. 2d at 597 (citing *Tyndall*, 31 F.3d at 213; *Hummel v. County of Saginaw*, 118 F. Supp. 2d 811, 817 (E.D. Mich. 2000)). This element of the third prong implicitly invites the Court to engage in a prospective inquiry as to the likelihood of the employee's ability to perform the essential functions of his job if afforded the requested accommodation. Indeed, precluding the Court from considering the progress and duration of Plaintiff's disabling condition following his termination would effectively relieve Plaintiff of his burden of proof as to a crucial element of the third prong. When the accommodation at issue is a request for leave, the Court may only determine the accommodation's likelihood of success with reference to the employee's progress during the period of requested leave. Absent consideration of such evidence, Plaintiff could prevail based on little more than his or her bald assertion to that he could have performed the essential functions of his job after leave. To allow this would essentially read the "perform the

essential functions" language out of the third prong. Therefore, I find that the Court may properly consider the post-termination progress and duration of Plaintiff's condition in determining whether he could have performed the essential functions of his job if afforded the requested accommodation. Other courts that have addressed this issue have taken a similar approach. *See, e.g., id.*; *Hummel*, 118 F. Supp. 2d at 817. Accordingly, I proceed to consider the following: (1) whether Plaintiff's request for additional leave was reasonable in light of the facts and information available to Dollar General at the time of his termination; and (2) whether he could have performed the essential functions of his job if afforded that accommodation.

    a.  Whether Plaintiff's Request for Additional Leave Was Reasonable

   Plaintiff readily admits that he was unable to perform the essential functions of his position at the time of his termination. (Wilson Dep. 117:8–25.) Indeed, at the time of his termination, Plaintiff was adamant that he could not return to work at all. (*Id.* 75:5–10.) As a general rule, "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified individual' protected by the ADA." *Tyndall*, 31 F.3d at 213. The only accommodation that Plaintiff requested was a further period of indefinite leave. (Wilson Dep. 82:9–83:13.) "Although in some instances additional medical leave may be a reasonable accommodation, it is only reasonable where 'it is finite and will be reasonably likely to enable the employee to return to work.'" *Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F. Supp. 2d 589, 596 (S.D.W. Va. 2008) (citing *Myers*, 50 F.3d at 283; *McNamara v. Tourneau, Inc.*, 496 F. Supp. 2d 366, 376 (S.D.N.Y. 2007)). Plaintiff's request was not for a clearly finite period. Although the note that Plaintiff delivered to Stinespring stated that he could potentially return to work on April 9, 2010, the note clearly indicated that that date was little more than a guess. (Pl.'s Mem. Ex. 11.) The note was not from his treating physician at Dominion Eye

Center, but from the attending physician at the emergency room. This physician was not familiar with Plaintiff's condition or his course of treatment. His relative lack of experience with Plaintiff's condition indicates that the date of April 9, 2010, was little more than his uninformed opinion as to the best case scenario. Moreover, the surrounding circumstances such as the severity of Plaintiff's condition and his history of requiring extended leave would have suggested to Stinespring that any estimated leave requirement was tentative at best. At the April 7, 2010, meeting, Plaintiff offered no indication or assurance that additional leave would enable him to return to work within a reasonable time.[8]

In arguing that the requested accommodation was reasonable, Plaintiff places great emphasis on the fact that he was requesting only two additional days of leave. The length of the requested leave, however, is not dispositive. Rather, the dispositive factor is the likelihood that the requested leave will enable the employee to return to work within a reasonable period of time. *See Kitchen*, 552 F. Supp. 2d at 596. If the length of the requested leave were dispositive, employees could effectively circumvent the ADA's protection against requests for indefinite leave by making successive requests for short periods of leave. The ADA does not empower employees to hold their employers hostage for indefinite periods in this manner. *Myers*, 50 F.3d at 283. Furthermore, it is far from clear that Plaintiff was requesting only an additional two days. Although the note submitted by Plaintiff stated that he could return to work on April 9, 2010, that bald, unsupported statement offered little assurance that he would actually do so. Based on

---

[8]  Furthermore, at the time of his termination, Dollar General had already given Plaintiff a full eight weeks of leave—two more than normally available under its medical leave policy. (Wilson Dep. 55:8–56:25.) Therefore, to the extent that a period of leave would have been a reasonable accommodation, Dollar General had already given Plaintiff such accommodation at the time of termination.

his prior history and the severity of his condition, Dollar General could have justifiably understood his request to be one for an indefinite period of leave.

This case is analgogous to *Kitchen v. Summers Continuous Care Center*, 552 F. Supp. 2d 589 (S.D.W. Va. 2008). In that case, an accident resulted in amputation of the plaintiff's left arm above the elbow. *Id.* at 591. Shortly before exhausting her leave under the Family and Medical Leave Act ("FMLA"), the plaintiff submitted a request to her employer for additional leave accompanied by a note from her doctor. *Id.* Her doctor opined, "I feel she will need ninety (90) days off from work." *Id.* Her employer denied her request and terminated her. *Id.* The court stated: "[I]f there is evidence in the record for a reasonable juror to find that the extended medical leave was a reasonable accommodation that would have allowed Plaintiff to perform her essential job functions, Summers' motion for summary judgment must be denied." *Id.* at 595–96. It further noted that although additional leave may be reasonable in some instances, "it is only reasonable where 'it is finite and will be reasonably likely to enable the employee to return to work.'" *Id.* at 596 (citing *Myers*, 50 F.3d at 283; *McNamara v. Tourneau, Inc.*, 496 F. Supp. 2d 366, 376 (S.D.N.Y. 2007)). The court went on to find that plaintiff had proffered insufficient evidence for such a finding. Plaintiff's doctor's note did not show that additional leave would have been a reasonable accommodation because it did not "establish that the leave was reasonably likely or foreseeable to enable Plaintiff to perform the essential duties" of her job. *Id.* at 596–97. As of the time the note was written, "there was absolutely no basis to conclude that at the end of the extended medical leave Plaintiff would have been able to perform her essential job functions." *Id.* at 597.

The same is true in this case. Plaintiff's doctor's note only offered the conclusory, unsupported prognosis that Plaintiff could return to work on April 9, 2010, with little or no

factual basis. Moreover, the note expressly contemplated that Plaintiff might not have sufficiently improved by that date. (Pl.'s Mem. Ex. 11.) ("If symptoms continue and the employee is unable to perform the full duties of their job by this date, please advise the employee to return to this facility or make an appointment with the referral physician for further evaluation."). Furthermore, given Plaintiff's history of requiring extended leave and his failure to improve during that period, Stinespring had substantial reason to doubt whether Plaintiff could return to work, either within two days or within any period reasonable period of time. At the time of Plaintiff's termination, Dollar General had already granted him six weeks of leave pursuant to its medical leave policy, plus an additional two weeks beyond that, plus an additional day beyond his release by Dr. Odom. Even after this extended period of leave, Plaintiff was not able to perform the essential functions of his job as of his termination date *Kitchen* strongly supports granting summary judgment in Defendants' favor.

The cases cited by Plaintiff to the contrary are factually distinguishable. As an initial matter, many of the cases cited by Plaintiff for the broad proposition that temporary leave is *per se* a reasonable accommodation simply held that where an employer in fact offered or provided leave, such accommodation was reasonable. *See, e.g.*, *Hennenfent v. Mid Dakota Clinic*, 164 F.3d 419, 421–22 (8th Cir. 1998), *EEOC v. Newport News Shipbuilding & Dry-Dock Co.*, 949 F. Supp. 403, 408 (E.D. Va. 1996). A finding that providing a temporary leave of absence fully discharges an employer's duty to provide a reasonable accommodation does not stand for the proposition that an employer must provide such leave in every case or that such leave will always constitute a reasonable accommodation. As explained above, affording leave may not be a reasonable accommodation in many cases.

Plaintiff cites *Humphrey* for the rule that "the ADA does not require an employee to show that a leave of absence is certain or even likely to be successful to prove that it is a reasonable accommodation." 239 F.3d at 1136. Rather, "[a]s long as a reasonable accommodation available to the employer could have plausibly enabled a handicapped employee to adequately perform his job, an employer is liable for failing to attempt that accommodation." *Id.* (citing *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869. 879 (9th Cir. 1990)). The Ninth Circuit proceeded to find that the statements in the plaintiff's doctor's note to the effect that her "condition was treatable and that 'she may have to take some time off until we can get the symptoms better under control'" were sufficient to satisfy this minimal requirement. *Id.* To the extent that this holding is inconsistent with *Kitchen*, *Kitchen* is more persuasive authority to this Court. Nevertheless, *Humphrey* remains factually distinguishable from the present case. In *Humphrey*, the plaintiff had not yet taken leave up to the point when she requested an accommodation. *Id.* at 1132–33. The Ninth Circuit recognized: "Of course, the requirement to grant leave . . . can not be repeatedly invoked, thus permitting an unqualified employee to avoid termination by requesting a leave of absence each time he is about to be fired . . . [T]he fact that a prior leave of absence was unsuccessful may well be a relevant consideration in determining whether additional leave would be a reasonable accommodation." *Id.* at 1136 n.13 (citing *Kimbro*, 889 F.2d at 879 n.10). In this case, Dollar General had already provided Plaintiff with eight weeks of leave, and his condition had not sufficiently improved.

Plaintiff cites *Feldman v. Law Enforcement Associates Corporation*, 779 F.Supp. 2d 472 (E.D.N.C. 2011), for the proposition that an employee's request for an additional three weeks of leave is not indefinite. *Id.* at 488. In that case, the plaintiff suffered from a flare up of multiple sclerosis that caused him to miss several days of work around the time of his termination. *Id.* at

23

481, 488. The plaintiff repeatedly requested a leave of absence of at least three weeks and alleged that he would have been able to return to work within no more than seven weeks. *Id.* at 488. The court found that the plaintiff's "request for leave in this case was not indefinite." *Id.* Again, the present case is distinguishable. As an initial matter, the court in *Feldman* was not considering the plaintiff's claims on a motion for summary judgment, but rather on a Rule 12(b)(6) motion for failure to state a claim. *Id.* at 480, 488. A different standard of review clearly applies to a case in this procedural posture. As the court noted, "[T]he court cannot say that the duration of the leave requested by [the plaintiff] was unreasonable *per se*. Rather, the question of whether [his] requested accommodation was reasonable is a factual question that may be appropriately addressed at the summary judgment stage or at trial." *Id.* at 488 n.9. The present case is before the court on a motion for summary judgment; therefore, the court may consider such factual questions. Moreover, *Feldman*, like *Humphrey*, is factually distinguishable from the present case. In *Feldman*, the plaintiff had not taken leave of any significant duration at the time of his request. *See id.* at 480, 488. Therefore, his employer had less reason to doubt that a three week period of leave would enable the plaintiff to fully recover and return to work. By contrast, in this case, Dollar General had already afforded Plaintiff eight weeks of leave, during which time his condition had not appreciably improved.

Plaintiff finally relies heavily on *Brown* and *LeFever* for the proposition that an employee need not be aware of any certain date of recovery in order for leave to qualify as a reasonable accommodation. (Pl.'s Mem. 27–30.) As already stated above, both cases have fairly limited persuasive value for this Court. In both of those cases, the plaintiff employees requested additional leave after exhausting their FMLA leave. *LaFever*, 2011 WL 1935888 at *1; *Brown*, 2009 WL 4895237 at *1. In both cases, the courts found that the employers wrongly rejected the

Case 4:11-cv-00024-JLK-RSB   Document 48   Filed 03/05/12   Page 24 of 28   Pageid#: 500

plaintiffs' requests even though they could not provide a date certain at which they could return to work. *LaFever*, 2011 WL 1935888 at *2, 4; *Brown*, 2009 WL 4895237 at *5. Nevertheless, even in those cases, the plaintiffs adduced evidence that their conditions would be of short-term duration, and that a reasonable period of leave would allow them to return to work. *See LaFever*, 2011 WL 1935888 at *3; *Brown*, 2009 WL 4895237 at *5, 8. In *Brown*, the plaintiff had in fact requested a return to light duties. *Brown*, 2009 WL 4895237 at *1. Accordingly, at the very least, their employers should have engaged them in the interactive process to better ascertain the length of required leave before rejecting their requests. *LaFever*, 2011 WL 1935888 at *4; *Brown*, 2009 WL 4895237 at *5, 8. By contrast, in this case Plaintiff gave no indication that he could have returned to work within a reasonable time. Accordingly, *Brown* and *LeFever* should not alter the conclusion that Plaintiff's request for additional leave was not a reasonable accommodation. In sum, even though Defendants may have failed to engage Plaintiff in the interactive process, Plaintiff cannot demonstrate that this failure resulted in failure to arrive at a reasonable accommodation. Plaintiff has failed to demonstrate that any reasonable accommodation existed. Although in certain circumstances a temporary leave of absence for a finite period may constitute a reasonable accommodation, Plaintiff has offered no evidence that his requested leave was finite or would have allowed him to return to work within a reasonable time. Accordingly, I find that summary judgment for Defendants is proper. *See, e.g.*, *Wells*, 483 F. Supp. 2d at 511.

> b. Whether Plaintiff Could Have Performed the Essential Functions of His Job Had Dollar General Afforded Him the Requested Leave

Even if Plaintiff's request for additional leave were reasonable based on the information available to Dollar General at the time of his termination, the record clearly shows that he would have been unable to return to work on April 9, 2010, or within a reasonable time thereafter.

When asked at what point after April 7, 2010 he would have been able to return to work, he responded, "I can't specifically give you a date, okay?" (Wilson Dep. 105:1–4.) Furthermore, it is clear from all of the evidence in the record that Plaintiff in fact could not have returned to work within a reasonable time. Following his termination, his condition did not improve and, in fact, deteriorated considerably, eventually requiring surgery and a seven-and-a-half-week recovery period.[9] (*Id.* 105:1–108:24.) In fact, Plaintiff testified that he could only have returned to work full time at Dollar General in March or April 2011—nearly a full year after his termination. (*Id.* 116:3–118:15.) Therefore, Plaintiff has adduced no evidence that he could have returned to work and performed the essential functions of his job within a reasonable time after his requested leave.

At oral argument, Plaintiff pointed to the following portion of his deposition testimony as evidence that he could have returned to work within a reasonable time after his termination:

> Q: How long after that April 7th date was it that you could actually go back to working?
>
> A: I can't accurate—I can't specifically give you a date, okay?
>
> Q: When did you start looking for another job?
>
> A: Oh, it was a while. I was having problems from it. I was having—it was a while afterwards, because I—I was having problems with my eyes and everything. And even though I was having problems, I got fired, I went out and put my application in for unemployment, I had to find—to keep job contacts. So I guess it probably a week, week and a half later, I guess.

---

[9] Plaintiff argues that Defendants should not be allowed to rely on the subsequent deterioration of his condition because it was "most likely caused by the defendant's own wrongful conduct in foreclosing Wilson's ability to get treatment by unlawfully failing to provide him a reasonable accommodation and simultaneously terminating him" (Pl.'s Mem. pg. 31.) He suggests that had he not lost his health insurance as a result of his termination, his condition would not have worsened. The record is entirely bereft of evidence to support such a causal relationship. It is just as plausible to assume that Plaintiff's condition would have worsened regardless of his access to treatment. Indeed, at the time of his termination, Plaintiff had undergone treatment for nearly two months with little or no improvement.

(*Id.* 105:1–14.)  Plaintiff cites this testimony as evidence that he could have returned to work at Dollar General within a week-and-a-half.  This testimony, however, is clearly not susceptible to a reading so favorable to Plaintiff.  The mere fact that Plaintiff began making employment contacts to qualify for unemployment compensation does not demonstrate that he was able to perform the essential functions of his job at Dollar General at that time.  Moreover, elsewhere in his deposition, Plaintiff clearly testified that his condition seriously deteriorated and that he would not have been able to perform the essential functions of his job at Dollar General for up to a year after his termination.  (*Id.* 105:1–108:24, 116:3–118:15.)  It is "well-established" that a "genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct."  *Halperin v. Abacus Tech, Corp.*, 128 F.3d 191, 198 (4th Cir. 1997).  In sum, Plaintiff has adduced no evidence that he could have returned to work at Dollar General within any reasonable period of time even if afforded the period of leave requested.  Accordingly, I will grant Defendants' Motion for Summary Judgment as to Plaintiff's failure to accommodate claim.

## V.  CONCLUSION

Based on the representations of Plaintiff's counsel at oral argument that the matter has been resolved to Plaintiff's satisfaction, I deem Plaintiff's Motion to Compel Discovery and Enlarge Time **MOOT**.  For the reasons set forth above, Defendants' Motion for Summary Judgment and [sic], in the alternative, Judgment on the Pleadings is **GRANTED**, and Defendants' Motion to Continue and/or Stay Trial Setting is **DENIED**.

The clerk is directed to send a copy of the Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 5th day of March, 2012.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE